UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SALLY ORR, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

BURBERRY LIMITED, a New York corporation; and DOES 1 through 10, inclusive,

Defendant.

Case No.: 1:26-cv-05020-VEC

**DEFENDANT BURBERRY LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, AND IN THE ALTERNATIVE, STAY**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ALLEGATIONS OF THE COMPLAINT ..... 2

III. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING UNDER RULE 12(b)(1) ..... 3

A. Legal Standard ..... 3

B. Plaintiff Lacks Standing To Pursue Her Claims ..... 3

IV. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) ..... 8

A. Legal Standard ..... 8

B. Plaintiff Fails To State A Claim For Intrusion Upon Seclusion ..... 9

C. Plaintiff Fails To State A Claim For Violation Of The California Penal Code Because Section 638.51 Does Not Apply To Websites ..... 11

1. Section 638.51 applies only to telephone communications, not websites ..... 11

a. Statutory Text and Structure ..... 11

b. Legislative History ..... 13

c. California Consumer Privacy Act ..... 14

d. Permitting A Claim Here Would Cause Absurd Consequences ..... 15

2. Even if Section 638.51 Applies to Websites, the TikTok Software Is Not a “pen register” or “trap and trace device” ..... 16

3. The Statute Must Be Construed in Burberry’s Favor ..... 18

V. ALTERNATIVELY, THE COURT SHOULD STAY THE CASE ..... 18

A. Legal Standard ..... 18

B. The Court Should Stay The Case Pending The Decision In *Variety* ..... 19

C. The *Loftus* Factors Support A Stay ..... 20

1. There Is No Prejudice to Plaintiff ..... 20

2. The Interests Of Burberry, The Court, Nonparties, And The Public All Favor Granting A Stay ..... 21

VI. CONCLUSION ..... 22

## I. <u>INTRODUCTION</u>

This case is one in a rash of similar actions brought by Plaintiff's counsel, Tauler Smith LLP, alleging violations of section 638.51 of the California Invasion of Privacy Act ("CIPA"). In this year alone, counsel for Plaintiff has filed at least 10 substantively identical cases in federal district courts and California state courts.[1] Each case is the same: plaintiffs allege that defendants are website operators that use "software owned by TikTok" on the website to "collect and transmit to TikTok scores of data points about a visitor, her browser and her computer" in violation of CIPA's trap and trace device provision. This case follows the same playbook. Plaintiff Sally Orr alleges that she visited www.burberry.com, where Burberry allegedly used TikTok Software that functions as a trap and trace device in violation of California Penal Code section 638.51. Plaintiff further alleges that Burberry's use of the TikTok Software constituted an intrusion into a private conversation or matter Plaintiff was involved in.

Neither of Plaintiff's claims has merit. Plaintiff lacks Article III standing to pursue her two claims because the courts do not recognize the information allegedly collected by the TikTok Software as causing a cognizable injury.

Even if she had Article III standing, however, her intrusion upon seclusion claim would still fail under Rule 12(b)(6) because she has not, and cannot, allege that the at-issue conduct is so egregious that it violates societal norms and is highly offensive.

---

[1] *See, e.g.*, *Cordova v. Cabinets To Go, LLC*, No. 2:26-cv-02675-JDP (E.D. Cal. Aug. 6, 2026) [Dkt. 1]; *Haviland v. Coachella Music Festival, LLC*, No. 2:26-cv-02449-DJC-CSK (E.D. Cal. July 11, 2026) [Dkt. 1]; *Hughes v. Glue Dots Int'l, LLC*, No. 2:26-cv-08181-AB-MAR (C.D. Cal. July 24, 2026) [Dkt. 1]; *Resnick v. Project Healthy Living, Inc.*, No. 2:26-cv-07640-HDV-E (C.D. Cal. July 14, 2026); *Nguyen v. US Expediters, LLC*, No. 4:26-cv-05411 (S.D. Tex. July 8, 2026); *Hughes v. Ellsworth Corp.*, No. 2:26-cv-06952-MWF-CTS (C.D. Cal. June 25, 2026) [Dkt. 1]; *Kirchner v. Transtek Indus., Inc.*, No. 2:26-cv-06591-FMO-MBK (C.D. Cal. June 17, 2026) [Dkt. 1]; *Miller v. Caldera + Lab, Inc.*, No. 2:26-cv-02027-CV-AS (C.D. Cal. Feb. 25, 2026) [Dkt. 1]; *Conohan v. Digital Assets Inc.*, No. 1:26-cv-01087-RA (S.D.N.Y. Feb. 9, 2026) [Dkt. 1]; *Moody v. EliteDigital, LLC*, No. 26STCV16850 (Cal. Super. Ct. May 27, 2026).

Further, Plaintiff's claim for violation of California Penal Code section 638.51 fails because that law applies only to *telephone surveillance* and not to cookies on websites. Indeed, the California Court of Appeal is currently considering this exact issue in *Variety Media, LLC v. Superior Court* (Case No. B350578). Thus, alternatively, the Court should stay this action pending the decision in *Variety.*

For these reasons, and as more fully explained below, Burberry requests the Court grant the Motion and dismiss Plaintiff's claims with prejudice or stay the case.

## II. ALLEGATIONS OF THE COMPLAINT

Burberry is a luxury goods and clothing company that operates www.burberry.com (the "Website"). (Compl. ¶¶ 1, 9.) Plaintiff alleges that Burberry integrated third-party software from TikTok (the "TikTok Software") into the Website's programming, and that this software allows TikTok to track and collect users' device type and configuration, browser type and version, operating system and version, screen resolution and color depth, system language settings, time zone settings, installed fonts, installed browser plugins or extensions, device memory, CPU class, canvas rendering characteristics, WebGL rendering characteristics, AudioContext processing characteristics, touch support and input capabilities, and network connection type. (*Id.* ¶¶ 3, 20, 25.) Plaintiff does not further describe these categories of allegedly tracked information. Plaintiff admits that "a website operator needs" the information at issue "to properly render the website on visitors' screens and devices. [… .] This action is not about Defendant's collection of such non-descript data to run the Website." (*Id.* ¶ 23.) Plaintiff alleges that she visited the Website on August 24, 2025. (*Id.* ¶ 4.)

Based on these allegations, Plaintiff asserts two causes of action. First, she alleges that Burberry violated California Penal Code section 638.51 by using the TikTok Software as a trap and trace device without a court order. (*Id.* ¶¶ 63–75.) Second, she alleges intrusion upon

seclusion based on the TikTok Software's collection of the dialing, routing, addressing, or signaling information at issue, and the alleged ability it gave TikTok to subsequently identify, profile, and track Plaintiff. (*Id.* ¶¶ 76–87.)

## III. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF ARTICLE III STANDING UNDER RULE 12(b)(1)

### A. Legal Standard

Because standing pertains to the federal court's subject matter jurisdiction, it is properly raised by a 12(b)(1) motion. *Casey v. Odwalla*, 338 F. Supp. 3d 284, 291 (S.D.N.Y. 2018). Where standing is challenged under Rule 12(b)(1), "the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *see also Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 272 (S.D.N.Y. 2018).

### B. Plaintiff Lacks Standing To Pursue Her Claims

Article III of the Constitution "endows the federal courts with '[t]he judicial Power of the United States'"—a power that, while not fully explained, "extends only to 'Cases" and 'Controversies[.]'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) as revised (May 24, 2016) (quoting Art. III, §§ 1-2). "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotations omitted). The Supreme Court has identified three elements for standing: (1) plaintiff must have suffered an injury in fact that is both concrete and particularized and actual or imminent; (2) there must be a causal connection between the injury and the complained-of conduct; and (3) it must be likely the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

In *Spokeo* and *TransUnion*, the Supreme Court addressed, and made more definite, the requirement that an injury be concrete. *Marsh & McLennan Agency LLC v. Williams*, 2025 WL 1265817, at *7 (S.D.N.Y. Apr. 30, 2025). While out of Circuit, *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) is instructive. There, the Ninth Circuit applied this concreteness analysis to alleged injuries arising from technology used to capture a user's interactions with a single website. *Id.* at 786, 788–95. In doing so, the court made clear that generalized claims of violations of a free-roaming privacy right, even if purportedly enshrined in statute, are insufficient to demonstrate the necessary concrete injury. *Id.*

While the various "circuits have diverged, at least in part, in their interpretation of *Spokeo* and *TransUnion*, developing different tests for determining whether a plaintiff's injury is concrete", with some "consider[ing] whether a plaintiff's harm satisfies each element required to state a common-law cause of action" and others "focus[ing] on whether the harm experienced by a plaintiff is similar in kind to a harm protected by one of the common-law privacy torts", "these approaches all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Id.* at 790–91; *see also Marsh & McLennan Agency LLC*, 2025 WL 1265817, at *7 ("Key to this inquiry is whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." (internal quotations omitted)). *TransUnion* and *Popa* make clear that plaintiffs cannot rely upon a general freestanding "right to privacy" without more. *See Popa*, 153 F.4th at 792 ("[Plaintiff's] broad theory that the common law protected privacy rights—pitched at a high level of generality—does not align with the analysis adopted in *TransUnion.*"). Indeed, plaintiffs in CIPA actions may no longer rely solely on a "statutory right" codified by CIPA. *Blalock v. FCA US, LLC*, 2026 U.S. Dist. LEXIS 184583, at *8 (C.D. Cal. Aug. 14, 2026). Instead, the Court must *independently*

assess whether the plaintiff's alleged harms hold a "close relationship to" traditionally recognized harms. *Popa*, 153 F.4th at 789; *see also TransUnion*, 594 U.S. at 424–27.

Plaintiff asserts a statutory claim under CIPA section 638.51 and the common law privacy tort of intrusion upon seclusion. (Compl. ¶¶ 63–87.) Under the framework above, Plaintiff's intrusion upon seclusion claim is the most relevant common law analogue for assessing whether her statutory CIPA claim gives rise to a concrete injury. Thus for both of her pleaded claims, to assess Article III standing the Court must determine whether the information allegedly collected by the TikTok Software gives rise to a concrete, traditionally recognized harm. *See Blalock*, 2026 U.S. Dist. LEXIS 184583, at *8–10 (analyzing whether plaintiff had Article III standing to bring CIPA section 638.51 and intrusion upon seclusion claims and concluding that both failed for lack of concrete injury); *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *6–7 (C.D. Cal. Dec. 15, 2025) (holding that "a conclusory allegation that defendant has intruded upon her seclusion would not be enough to establish standing" and that "[p]laintiff must adequately allege harm from the statutory violations that is analogous to the ... common law tort of intrusion upon seclusion").

Intrusion upon seclusion (and therefore CIPA under this Article III analysis framework) requires that Plaintiff "show 'an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, ***of a kind that would be highly offensive to a reasonable man***.'" *Popa*, 153 F.4th at 791, citing *Nayab v. Cap. One Bank* (USA), N.A., 942 F.3d 480, 491 (9th Cir. 2019) (emphasis added) (quoting Restatement (Second) of Torts § 652B cmt. a (Am. Law Inst. 1977)). "There are ... at least two ways tracking technologies may result in highly offensive conduct. First, the information collected could be especially sensitive, for example health or financial information. Second, the scope of the collection may be so broad, for example by tracking a Plaintiff's activity across other websites, that it renders the tracking

highly offensive." *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026); c*ompare, e.g.*, *U.S. v. Acevedo-Lemus*, 2016 WL 4208436, at *4 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. App'x 571 (9th Cir. 2020) ("Internet users do not have reasonable expectations of privacy in their own IP addresses or the IP addresses of the websites they visit.") *and United States v. Heckencamp*, 482 F.3d 1142, 1146 (9th Cir. 2007) (holding that a defendant had "no reasonable expectation of privacy" in "network logs"), *with Semien v. PubMatic Inc.*, 2026 WL 216333, at *4–5 (E.D. Cal. Mar. 31, 2026) (finding reasonable expectation of privacy in "sensitive information like health status and treatment, travel plans, political affiliation, sexual orientation, and more") *and Garcia v. Truist Fin. Corp.*, 825 F.Supp.3d 1149, 1160–62 (C.D. Cal. Mar. 25, 2026) (finding reasonable expectation of privacy in information related to "citizenship, housing, and employment statuses").

Under either approach, Plaintiff fails to show that the tracking of her interactions with Burberry's website by the TikTok Software caused the type of "highly offensive" interferences or disclosures that are actionable at common law. Plaintiff alleges that the TikTok Software collected her device and browser information. (Compl. ¶ 25.) However, "the mere collection of device-type data or browser metadata is insufficient to establish constitutional standing." *Malko v. GNC Holdings, LLC*, 2026 WL 2218133, at *4 (C.D. Cal. July 29, 2026); accord, *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (finding collection of device identifiers from a website visit "does not cause the kind of harm that can be vindicated in federal court", citing *United States v. Forrester*, 512 F.3d 500, 509–11 (9th Cir. 2008)); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) ("If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data."); *Cheung v.*

*Slickdeals, LLC*, 2026 WL 1872831, at *9 (C.D. Cal. June 29, 2026) (dismissing for lack of standing where complaint failed to "specify what personal information about plaintiff [] defendant actually obtained" and holding that "[v]ague references to 'browsing activity' and 'page interactions' are insufficient" to allege a concrete injury analogous to a common-law invasion of privacy tort). Because neither the type nor scope of information allegedly collected by the TikTok Software is highly offensive, Plaintiff has not and cannot demonstrate a concrete injury sufficient to confer Article III standing for her statutory CIPA or common law intrusion on seclusion claims.

At least three federal district courts have found that ***identical claims as those here***, brought by ***the same plaintiff's counsel as here***, failed for lack of Article III standing. *See, e.g.*, *Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal. 2025); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025); *Kishnani*, 2025 WL 1745726, at *3, *appeal dismissed*, 2025 WL 2943080 (9th Cir. Oct. 3, 2025). Courts in this District have dismissed similar cases on the same basis. *See, e.g.*, *Zhizhi Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025); *Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025). Nor does it matter that Plaintiff alleges that the TikTok Software "match[es] new data it receives during a visit regarding a Website visitor's device and browser, and activities on the Website, with data about the visitor already in TikTok's possession" (Compl. ¶ 34) enabling TikTok to "build behavioral profiles on people across the internet." (*Id.* ¶ 38.) Indeed, *Garcia* rejected a materially identical argument:

> The FAC primarily alleges that Defendant's website dropped cookies that could be used by third-party websites to build expansive visitor profiles with aggregated data from other non-parties. However, in cases like *In re Facebook*, the "cradle to grave" consumer profiles at issue that tracked activity across browsing sessions and websites were created by the Defendant. 659 F.3d at 599; *see also Semien*, 2026 WL 216333, at *4 ("[Defendant, a databroker,] tracked plaintiffs' future web-browsing activity across

> the internet"). At best, the FAC alleges that Defendant's conduct amounted to informing a third party about Plaintiff's interactions with its website. This argument is not sufficient to show that Defendant caused any injury Plaintiff may have suffered as a result of visitor data aggregated by those third parties.

2026 WL 925028, at *5. The Court should reach the same conclusion here and dismiss both of Plaintiff's claims for lack of Article III standing.

***Finally***, Plaintiff's claims also fail to satisfy the traceability requirement of Article III. Plaintiff herself concedes that the data collected by the TikTok Software is "non-descript" and "non-personal" and "cannot identify an individual" on its own. (Compl. ¶¶ 23, 26.) According to Plaintiff's own theory, it is only when TikTok aggregates that data with "data about the visitor already in TikTok's possession" that it allegedly becomes identifying. (*Id.* ¶ 34.) Thus, to the extent Plaintiff has alleged any cognizable injury at all (which Burberry does not concede), it is traceable to TikTok's subsequent aggregation—not to Burberry's transmission of concededly non-identifying information. *See California v. Texas*, 593 U.S. 659, 668–69 (2021); *Garcia*, 2026 WL 925028, at *5 ("This argument is not sufficient to show that Defendant caused any injury Plaintiff may have suffered as a result of visitor data aggregated by those third parties."); *In re Zeta Global Data Priv. Litig.*, 2026 WL 2254612, at *8 (S.D.N.Y. Aug. 5, 2026) (holding that without a concrete pleading that private data plaintiffs had not willingly relinquished was transferred to a third party, the complaint failed to plead an injury traceable to unlawful conduct). For this further reason, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1).

## IV. <u>THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)</u>

### A. <u>Legal Standard</u>

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted);

*see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept the factual allegations in the complaint as true, it need not accept as true "conclusory allegations or legal conclusions couched as factual allegations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (alterations accepted and internal quotation marks omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (internal quotations omitted). Similarly, "[t]he Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 216 (E.D.N.Y. 2003) ("[I]f the allegations of a complaint are contradicted by documents made a part therefore, the document controls and the court need not accept as true the allegations in the complaint.").

## B. Plaintiff Fails To State A Claim For Intrusion Upon Seclusion

To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Plaintiff fails to plausibly allege either element.

As to the first element, "Generally, the internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("the information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices. Even assuming this information was transmitted without Plaintiffs' knowledge … disclosure does not constitute an

egregious breach of social norms." (citation omitted)). This is because "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016) ("[C]ourts have long understood that tracking cookies can serve legitimate commercial purposes." (citation omitted)). As a result, courts "have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications."[2] *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (citation omitted). Plaintiff has not alleged any unique circumstances here that show she had a plausible and reasonable expectation of privacy.

Plaintiff has also failed to plausibly allege the second, "highly offensive" element of her claim because she "identifies no embarrassing, invasive, or otherwise private information," collected by the TikTok Software. *Popa*, 153 F.4th at 791. In fact, Plaintiff affirmatively alleges that the information collected by the TikTok Software is limited to "non-descript" and "non-personal" information "about the devices and browsers" of visitors to the website. (Compl. ¶¶ 23–24; *accord id.* ¶ 25 (listing innocuous data allegedly collected by the TikTok Software); ¶ 26 ("Your browser fingerprint is a collection of innocuous information about your PC.").) However, "[c]omputer users . . . have no reasonable expectation of privacy in electronic data that is not itself content." *People v. Evensen*, 4 Cal. App. 5th 1020, 1027 (2016); *see also In re Zynga Privacy Litig.* 750 F.3d 1098, 1108–1109 (9th Cir. 2014) ("[C]ourts have long distinguished between the

[2] "Claims for intrusion upon seclusion under California common law and invasion of privacy under the California Constitution are substantively similar." *In re Meta Android Priv. Litig.*, 2026 WL 1279416, at *6 (N.D. Cal. May 11, 2026). "Since these claims involve similar elements, courts typically consider them together." *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *2 (N.D. Cal. May 21, 2026).

contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy).”). Even assuming these allegations are true, they are insufficient to state a claim as they simply show that Burberry did not engage in any offensive, let alone highly offensive, conduct, but instead engaged in expected and commercially acceptable and routine behavior. This claim should be dismissed.

### C. Plaintiff Fails To State A Claim For Violation Of The California Penal Code Because Section 638.51 Does Not Apply To Websites

#### *1. Section 638.51 applies only to telephone communications, not websites*

Trap and trace devices are devices used by law enforcement to track who is calling who ***by telephone***. They are not devices that relate in any way to purported tracking on the internet. This is confirmed by the statutory text and structure, the legislative history, the context of California’s overall regulatory scheme, and canons of statutory construction.[3] As a result, section 638.51 does not apply in this case and the claim for relief should be dismissed.

##### a. Statutory Text and Structure

When interpreting a statute, the California Supreme Court has instructed lower courts to “begin with its text” because “statutory language typically is the best and most reliable indicator of the Legislature’s intended purpose.” *Larkin v. Workers’ Comp. Appeals Bd.*, 62 Cal. 4th 152, 157 (2015). If the statute’s text “depends on cross-referenced provisions,” those provisions are equally indicative of the Legislature’s intent. *Id.* at 160.

Starting with the text, section 638.51 states that “a person may not install or use a pen

[3] Burberry acknowledges that certain federal district courts have held that section 638.51 applies to websites. (Compl. ¶ 69.) But, those cases are not binding on this Court and for the reasons explained here, incorrectly interpret the statute. The California Court of Appeal is reviewing this precise issue in *Variety*.

register or trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." A "[p]en register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50. A "[t]rap and trace device" is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* While the definitions of "pen register" and "trap and trace device" do not expressly state whether they apply to websites, the cross-referenced provisions in the statute, sections 638.52 and 638.53, confirm that they ***do not***.

Sections 638.52 and 638.53 permit law enforcement to use a pen register or trap and trace device if conditions are met. Section 638.52(d) details specific information that must be included in a court order authorizing the use of a pen register or trap and trace device. Such information includes "[t]he identity, if known, of the person ... in whose name is listed ***the telephone line*** to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(1). The order must also include "[t]he ***number*** and, if known, physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached." *Id.* § 638.52(d)(3). Subsection (c) also refers to telephones, stating that information acquired via a pen register or trap and trace device shall not include the physical location of the targeted individual "except to the extent that the location may be determined from the ***telephone number***." *Id.* § 638.52(c). The multiple references to telephones in sections 638.52 and 638.53 demonstrate that pen registers and trap and trace devices apply only to telephone communications. If the Legislature had intended, in 2015, for a pen register and trap and trace device to apply to websites, it would have used broader

language that encompassed them.[4]

**b. Legislative History**

In addition to the statutory text, a court may consider the legislative history to determine the Legislature's intent. *Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.*, 29 Cal. 4th 911, 920 (2003). The legislative history further supports the conclusion that section 638.51 applies only to telephone communications.

Assembly Bill 929 (the bill that led to California Penal Code sections 638.50-638.53) was passed into law in 2015. AB 929 "authorize[d] state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in ***telephone surveillance***." (Request for Judicial Notice ("RJN") Ex. B at 4 (emphasis added); Ex. C at 1 (emphasis added).) The legislative history repeatedly refers to pen registers and trap and trace devices as tools that law enforcement use to collect telephone numbers:

> One of the tools available to law enforcement is called a 'pen register' which allows law enforcement to record all outgoing ***numbers from a particular telephone line***. In addition, another tool law enforcement uses is called a 'trap and trace device' which allows them to record ***what numbers have called a specific telephone line, i.e. all incoming phone numbers***. (RJN Ex. A at 10 (emphasis added).)
>
> Pen registers and track *[sic]* and trace devices track ***incoming and outgoing telephone calls***. (RJN Ex. A at 10 (emphasis added).)
>
> The amendments also clarify that any location information obtained by a pen register or a track *[sic]* and trace device is limited to the information that is contained in the ***telephone number*** (e.g. the area code). (RJN Ex. A at 11 (emphasis added).)
>
> Authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in ***telephone surveillance*** if there is probable cause to believe that their

[4] Indeed, in 2016 California's Legislature enacted Penal Code section 632.01 (not at issue here), which addresses disclosures "in any forum, including ... ***Internet Web sites***." Cal. Penal Code § 632.01(a)(1).

> use will lead to evidence of a crime. (RJN Ex. B at 1 (emphasis added).)
>
> As noted above, pen registers/trap and trace devices are used by law enforcement for ***telephone surveillance*** to record incoming and outgoing ***phone numbers from a tapped line***. (RJN Ex. B at 5 (emphasis added).)

The legislative history ***does not*** mention websites, IP addresses, or website technologies, even though those existed in and before 2015.

The Legislature reaffirmed in Assembly Bill 1924 that section 638.51 was meant to apply only to telephones. AB 1924, enacted into law in 2016, permits the government to compel the production of electronic communications if the government obtains a search warrant or a wiretap order. (RJN Ex. F at 6–9.) The legislative history of AB 1924 explains that the information that pen registers and trap and trace devices obtain from "electronic communication[s]" are "***call detail records***." (RJN Ex. F at 7 (emphasis added).) By using the term "call detail records," the Legislature confirmed that pen registers and trap and trace devices record phone numbers—not information derived from websites, like IP addresses. (*See* RJN Ex. D at 7 ("A 'trap and trace device' records what ***numbers had called a specific telephone***, i.e., all ***incoming phone numbers***." (emphasis added)); Ex. E at 1 ("[P]en register/trap and trace-device[s] ... are ***telephone surveillance devices used to record incoming and outgoing phone numbers***" (emphasis added)).)

**c. California Consumer Privacy Act**

When interpreting a statute, courts "endeavor to harmonize it with other enactments to the extent possible." *Lexin v. Superior Court*, 47 Cal. 4th 1050, 1095 (2010). Here, Plaintiff's interpretation of section 638.51 undermines the California Consumer Privacy Act ("CCPA").

Enacted in 2018, three years after section 638.51, the CCPA regulates the collection of "personal information" by businesses. Cal. Civ. Code § 1798.100 *et seq.* The definition of "personal information" includes: (1) "Identifiers such as a ... ***Internet Protocol Address***"; and (2)

"Internet or other electronic network activity information, including ... ***a consumer's interaction with an internet website application***." *Id.* §§ 1798.140(v)(1)(A), (F) (emphasis added). Importantly, the CCPA expressly permits businesses to collect personal information if the business complies with the CCPA. *See id.* § 1798.100(c). And the CCPA grants consumers the "right to request that a business delete any personal information about the consumer that the business has collected from the consumer." *Id.* § 1798.105.

If, according to Plaintiff, section 638.51 prohibits businesses from collecting any information generated from a website visitor's interaction with a website without a court order, why did the Legislature—without any reference to section 638.51 whatsoever—expressly permit businesses to collect such information and afford consumers the right to request that businesses delete such information? The only logical way to harmonize the statutes is to conclude that section 638.51 does not apply to websites.

**d. Permitting A Claim Here Would Cause Absurd Consequences**

Interpreting section 638.51 as Plaintiff proposes would lead to results that the Legislature never contemplated. *See Flannery v. Prentice*, 26 Cal. 4th 572, 578 (2001) ("We avoid any construction that would produce absurd consequences"). If, as Plaintiff alleges, a website is using a trap and trace device when it installs technology like the TikTok Software on a website visitor's internet browser and collects information about the devices and browsers of visitors to its website (Compl. ¶¶ 23–25), then every website that does the same would be subject to liability, including numerous federal district courts and—as plaintiff affirmatively alleges—"government agencies." (*Id.* ¶ 38.) For instance, the Northern District of California's "Privacy and Security Policy" states that the Court collects the "name of the domain from which [a user] accessed the internet ... The IP address from which [a user] accessed the Judiciary's website ... the date and time [a user] accessed [the] site. The type of browser and operating system used to access the uscourts.gov site.

The pages [a user] visit[s]”.[5] Similarly, the California State Assembly’s “Terms & Privacy,” states that its website automatically collects a website visitor’s IP address and installs cookies on a website visitor’s browser.[6] This conduct is no different than what Plaintiff alleges of Burberry. Criminalizing website activity that is so common that it is used by federal district courts and State governments cannot be what the Legislature intended when it enacted section 638.51, especially as the statute and its legislative history never mention the internet, websites, or website technologies.

For the reasons set forth above, the Court should find that section 638.51 applies only to telephone communications, not websites, and dismiss Plaintiff’s claim.[7]

***2. Even if Section 638.51 Applies to Websites, the TikTok Software Is Not a “pen register” or “trap and trace device”***

Even if the Court declines to find that Section 638.51 is limited to telephones, Plaintiff’s claim fails for an additional, and more fundamental, reason. Under section 638.50, a pen register and trap and trace device record “dialing, routing, addressing, or signaling information . . . ***but not the contents of a communication***.” Cal. Penal Code § 638.50(b)-(c) (emphasis added). The “contents” of a communication “refer[] to the intended message conveyed by the communication, and do[] not include record information regarding the characteristics of the message that is generated in the course of the communication.” *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Thus, for a device to qualify as a “pen register” or a “trap and trace device” it cannot

[5] *See Privacy & Security Policy*, https://www.uscourts.gov/privacy-security-policy#privacy (last visited Aug. 16, 2026).
[6] *See Terms & Privacy*, https://www.assembly.ca.gov/terms-privacy (last visited Aug.16, 2026).
[7] While not precedential, at least two California superior courts have reached this conclusion, showing that the outcome requested by Burberry is the growing trend at the California trial court level. *Schallert v. Orkin LLC*, 2025 Cal. Super. LEXIS 85120 (Cal. Super. Ct. Dec. 15, 2025); *Rodriguez v. Ink Am. Int’l Grp. LLC*, 2025 Cal. Super. LEXIS 84257 (Cal. Super. Ct. Dec. 10, 2025).

capture the communication itself (that would constitute "contents"); it must capture only the information documenting the communication occurred. *Kishnani*, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (pen registers and trap and trace devices "are tools which provide information about the 'who,' 'when,' 'where,' of communications—but not the 'what.'").

Plaintiff's own allegations demonstrate that the information obtained by the TikTok Software is not "dialing, routing, addressing, or signaling information" – i.e., the information subject to the statute. Plaintiff alleges that the TikTok Software "gathers and transmits to TikTok a visitor's navigation on the Website, moving from webpage to webpage, based on the URLs of the webpages." (Compl. ¶ 32.) By alleging that the TikTok Software captures a visitor's page-by-page navigation through URLs, Plaintiff necessarily alleges that the Software obtains information that may qualify as the "contents" of a communication—not mere routing or addressing data. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1116 (N.D. Cal. 2025) ("[D]etailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications."); *QUI NGUYEN v. KLAVIYO, INC.*, 2026 WL 2079038, at *2 (N.D. Cal. Feb. 20, 2026) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."). A device that captures such contents is, by statutory definition, *not* a pen register or trap and trace device. *See* Cal. Penal Code § 638.50(b)–(c).

Critically, Plaintiff cannot escape this dilemma by alleging that the TikTok Software simultaneously collects both content and non-content information. Courts have recognized that a plaintiff may rely on *different* cookies—each transmitting different data—to support separate causes of action. *See Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652, at *50 (N.D. Cal. Oct. 16, 2025). But that reasoning has no application here, where Plaintiff alleges only

*one* cookie: the TikTok Software. Plaintiff cannot plausibly allege that the very same cookie both obtains the contents of communications (URLs reflecting user-generated search queries) and does not obtain the contents of communications (as required to qualify as a pen register or trap and trace device). Because the statutory definitions of "pen register" and "trap and trace device" each require that the device capture information "***but not the contents*** of a communication," Cal. Penal Code § 638.50(b)–(c), Plaintiff's claim under section 638.51 fails as a matter of law.

#### *3. The Statute Must Be Construed in Burberry's Favor*

To the extent there is any doubt about the proper interpretation of section 638.51, the Court must construe the statute in Burberry's favor because (1) the statute is penal in nature and creates new liability, *see Saracco Tank and Welding Co. v. Platz*, 65 Cal. App. 2d 306, 315 (1944), and (2) the rule of lenity requires ambiguous criminal statutes, even when used as the basis for a civil claim, to be construed in the defendant's favor. *See People v. Mutter*, 1 Cal. App. 5th 429, 436 (2016); *People v. Mobil Oil Corp.*, 143 Cal. App. 3d 261, 276 (1983).

## V. ALTERNATIVELY, THE COURT SHOULD STAY THE CASE

### A. Legal Standard

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. co.*, 299 U.S. 248, 254 (1936)). "The person seeking a stay bears the burden of establishing its need." *Id.* at 97 (citation omitted). When considering whether to stay a case pending the resolution of related proceedings, courts in this District consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020). These factors weigh strongly in favor of a stay.

### B. The Court Should Stay The Case Pending The Decision In *Variety*

A matter bearing directly on the claims in the instant action is currently pending before the California judiciary. Specifically, the California Court of Appeal is set to resolve whether section 638.51 applies to website software in *Variety Media LLC v. Superior Court*, No. B350578.

Similar to Plaintiff here, the plaintiff in *Variety* alleged that the defendant's website violated Penal Code section 638.51 because the website used software that constituted a pen register. (RJN Ex. G ¶¶ 209–10.) The defendant demurred, arguing that Penal Code section 638.51 does not apply to website software. (*Id.* Ex. H at 11–21.) The superior court overruled the demurrer. (*Id.* Ex. I.) The defendant then filed a petition for writ of mandate challenging the superior court's order. (*Id.* Ex. J.) The defendant argued that the superior court erred because the statute's text, legislative history, the California Consumer Privacy Act, and public policy all weigh in favor of holding that the statute does not apply to website software. (*Id.*) On January 8, 2026, the Court of Appeal issued an Order to Show Cause, directing the superior court to explain why the petition should not be granted. (*Id.* Ex. K.) On March 25, 2026, respondent filed a return to the petition (*id.* Ex. L) and on April 16, 2026, petitioner filed its reply. (*Id.*) The submission of amicus briefs and supplemental briefing has concluded, and oral argument took place August 25, 2026—the day before the filing of the instant Motion. (*Id.*)

The Court of Appeal's consideration of CIPA in general, and Penal Code section 638.51 in particular, is overdue. These cases have been percolating in state and federal trial courts for several years, and judges have done their best to construe the statutory scheme, but their decisions conflict, leaving companies unable to determine what does or does not constitute a violation of the statute. As one judge put it:

> The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies. Indeed, we have reached the point where it's often borderline impossible to determine whether a defendant's online conduct fits within the language of the statute.

*Doe*, 806 F. Supp. 3d at 1112.

The resolution of *Variety Media* will inform the instant action before the Court and is integral to resolving the issues in dispute, particularly if the Court dismisses Plaintiff's remaining claim for intrusion upon seclusion. The Court should therefore stay the case pending a determination by the California Court of Appeal on whether section 638.51 applies to websites.

### C. The *Loftus* Factors Support A Stay

#### *1. There Is No Prejudice to Plaintiff*

The appropriateness of a stay is bolstered by the factors articulated in *Loftus*. The first *Loftus* factor analyzes possible prejudice to the non-moving party from the proposed stay. Where a "case is still in its nascent stage, a stay would result in little to no prejudice to Plaintiff." *Alloway v. Bowlero Corp.*, 2024 WL 4827752, at *7 (E.D.N.Y. Nov. 18, 2024); *see also Amron v. 3M Minnesota Mining & Mfg. Co.*, 2024 WL 263010, at *3 (E.D.N.Y. Jan. 24, 2024) (holding that a stay would not result in any material prejudice to plaintiff where a discovery schedule has not been set, discovery has not begun, and depositions have not been taken). Here, the case is at the pleadings stage: there are no pressing deadlines, no trial date, and the parties have not undertaken any discovery. At most, awaiting a ruling by the California Court of Appeal may result in a slight delay to the ultimate resolution of this action. Consequently, any prejudice to Plaintiff would be minimal, if any exists at all.[8]

[8] While inherent in any stay is some degree of "prejudice [to] the plaintiff's ability to obtain a prompt judgment," *Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 2023 WL 7180683, at *4 (S.D.N.Y. Nov. 1, 2023), the requested stay here "is not indefinite." *Id.*

### *2. The Interests Of Burberry, The Court, Nonparties, And The Public All Favor Granting A Stay*

"The only question of law in the motion-to-dismiss briefing is the question of [California] law that the Court of Appeals may definitively resolve in [*Variety*]. Expending further resources of the Court and parties on a difficult question of [California] law that the Court of Appeals may imminently resolve would be wasteful." *Sylvester v. S. Cross, LLC*, 2024 WL 4728598, at *2 (E.D.N.Y. Nov. 9, 2024).[9] Under such circumstances, "the interests of defendant, the Court, nonparties, and the public all favor granting a stay." *Id.*; *see also Leslie v. Thomson Reuters Corp.*, 2023 WL 6173511, at *2 (S.D.N.Y. Sept. 22, 2023) (issuing stay; it "would be an inefficient use of time and resources of the Court and the parties to proceed in light of a pending [higher court] decision that will significantly impact this litigation"); *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 2018 WL 3830921, at *2 (S.D.N.Y. Aug. 13, 2018) (acknowledging the public interest in "avoiding extra [judicial] cost").

Here, in the absence of a stay, the parties may have to engage in litigation that would potentially be rendered moot. Indeed, once "the [California] Court of Appeals issue a ruling in [*Variety*], its interpretation of [section 638.51] [will] be binding on this Court and [will] therefore likely determine the key issue in this case." *Urena*, 2024 WL 1333012, at *2 (citing *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that [federal courts] are bound by a state court's construction of a state statute."); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp.

*Variety* has been fully briefed and oral argument has been held. A decision is imminent. "A stay is especially warranted here, where 'a higher court is close to settling an important issue of law bearing on the action.'" *Urena v. Sonder USA Inc.*, 2024 WL 1333012, at *2 (S.D.N.Y. Mar. 28, 2024) (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012)).

[9] While Plaintiff's claim for violation of section 638.51 is not the only claim, courts in this District have found stays warranted where the disposition of another case would "significantly impact[]," *Leslie*, 2023 WL 6173511, at *2, or "bear[] on," *Sikhs for Justice*, 893 F. Supp. 2d at 622, the action. California's forthcoming decision in *Variety*, which may dispose of half the action, will do that.

3d 262, 275 (S.D.N.Y. 2018)). Accordingly, the California Court of Appeal's decision in *Variety*—in either direction—will materially inform this Court's analysis. For instance, if this Court denies the Motion but the Court of Appeal determines that section 638.51 does not apply to the website technology at issue here, proceeding into discovery would waste the parties' resources and judicial resources. Alternatively, granting Burberry's Motion only to later have California reach a contrary conclusion could also result in a waste of judicial resources. Either way, awaiting the *Variety* decision will result in more streamlined litigation and efficient use of judicial resources. These factors, like the others, weigh in favor of a stay. Thus, the court should stay this matter pending a decision in *Variety*.

## VI. CONCLUSION

For the foregoing reasons, Burberry respectfully requests that the Court grant the Motion and dismiss Plaintiff's claims with prejudice or, in the alternative, stay the case pending the California Court of Appeal's ruling in *Variety Media, LLC v. Superior Court*.

Dated: August 26, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ P. Craig Cardon_*

Sylvia Waghorne, NY Bar No. 5999842
swaghorne@sheppard.com
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

P. Craig Cardon, admitted *pro hac vice*
ccardon@sheppardmullin.com
Kevin Murphy, *pro hac vice* forthcoming
kmurphy@sheppard.com
Rana Salem, *pro hac vice* forthcoming
rsalem@sheppard.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700

Abby Meyer, admitted *pro hac vice*
ameyer@sheppard.com
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: (714) 513-5100

Dane C. Brody Chanove, admitted *pro hac vice*
dbrodychanove@sheppardmullin.com
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone: (858) 720-8900

Attorneys for *Defendant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 4(B)(i) of Judge Caproni's Individual Practices in Civil Cases, I certify that the attached memorandum of law contains 7,334 words according to the word processing program with which it was prepared.

*/s/ P. Craig Cardon*
P. Craig Cardon